## Cornell Unemployment Compensation Case.

Argued March 8, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Charles J. Cornell,* appellant, in propria persona.

*William L. Hammond,* Special Deputy Attorney General, with him *Richard H. Wagner* and *T. McKeen Chidsey,* Attorney General, for appellee.

PER CURIAM, April 12, 1949:

In this unemployment compensation case, there is no dispute as to the facts. The only question presented is whether or not the claimant, Charles J. Cornell, had "good cause," within the meaning of the Unemployment Compensation Law of December 5, 1936, P. L. (1937), 2897, § 402 (b), as last amended by the Act of June 30,

1947, P. L. 1186, § 2, 43 PS § 802 (b), for voluntarily leaving his employment. The claim for compensation was denied by the bureau, the referee, and the Board of Review upon the ground that claimant had failed to establish that he had good cause in voluntarily leaving work. The board found that claimant failed to show any necessitous reason for his separation. Claimant has appealed.

The claimant was last employed by the Pocono Manor Association as a plumber at a monthly salary of $233, from which the sum of $30 for room and board was deducted. Claimant was accustomed to eat his meals at the cafeteria provided by the association for personnel who worked at the Manor. On July 5, 1948, he became involved in an argument with an attendant in the cafeteria. Claimant described the affair in these words: "The sugar bowls were empty and I asked him to fill them and we had hot cakes that morning and when I went back to the table there was no syrup and I said, hell, Joe, what's the matter, are you fellows on strike. He blew off the handle but I thought he was joking. I went back to the table. He picked up a chair and was going to strike me with the chair but some of the people who were in the cafeteria having breakfast they intervened and settled the argument." As a result of this incident, the chef arranged for claimant to eat his meals in an upstairs dining room with members of the staff; but this was not satisfactory from claimant's point of view because, as he said, the schedule for mealtime there conflicted with his hours of duty. But it does not appear that he could not have adjusted his hours of work so as to have taken his meals in the upstairs dining room. Finally, claimant told his immediate superior, the engineer, that if the situation could not be corrected, he would have to leave. Before the management could do anything further about the matter, claimant left his employment on July 13, 1948.

Claimant's alleged failure to receive meals when and where desired was not the result of any neglect on the part of the employer to provide dining facilities for its employees. Rather, it resulted from the personal animosity between claimant and the cafeteria attendant which was engendered by claimant's own remarks. Claimant himself took no steps to correct the situation which he had been instrumental in creating, and he gave his employer no opportunity to act upon his complaint. We think the employer was under no duty either to discharge the cafeteria attendant or to provide private dining accommodations for claimant. Consequently, the association's failure to do either of these things did not furnish claimant with good cause for leaving his employment. See *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A. 2d 898; *Dames Unemployment Compensation Case*, 158 Pa. Superior Ct. 564, 45 A. 2d 909.

Decision is affirmed.